Asociación Industrial Guayamesa, Inc., etc., Plaintiff and Appellee, *v.* Bernardino Ortiz, Defendant and Appellant; Cleofe García Badillo, et al., Defendants.

No. 6833.   Argued May 9, 1935.—Decided June 3, 1935.

*T. Bernardini de la Huerta* for appellant.   *A. Porrata Doria* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

The Asociación Industrial Guayamesa, a domestic corporation, brought an action of debt against Bernardino Ortiz, Cleofe García, and Guillermo Garáu to collect $1,260 as rent for certain real property which it leased to Ortiz with the solidary guaranty of the others.

The lease was by public deed, and the three defendants subscribed separate promissory notes in favor of the corporation, to represent monthly payments, all of which provided as follows: "We hereby authorize any attorney to appear in any court, in any suit which the holder of this obligation may bring at any time after maturity, to accept summons, confess the debt, and consent to the judgment which may be rendered, and we bind ourselves to pay the costs and fees of the attorney whom the creditor may use

before any court of justice, until its claim shall have been satisfied.''

Ortiz answered the complaint and acknowledged the contract and the existence of seven promissory notes in the possession of the plaintiff, but set up a counterclaim for $1,800. He prayed for a judgment ordering the plaintiff to deliver the seven promissory notes to him and to pay him $810 ''or what is justly found to be due according to the pleadings, or any other pronouncement which may be proper under the pleadings, together with costs, expenses, and attorney's fees.''

He based his counterclaim substantially on the following facts: That he was never given the actual possession of the building which was leased to him for a bakery; that the said building was occupied by Secundino Rodríguez, who paid to the plaintiff $50 monthly, the plaintiff agreeing with the defendant that the latter should continue, as he did continue, to pay the stipulated rent with the understanding that the plaintiff would see to it that Rodríguez vacated the building and would finally credit the defendant with the $50 monthly received from Rodríguez; that when Rodríguez left, the building was not turned over to him either, Juan Andújar occupying it, for which reason, since only seven months remained before the termination of the contract, the defendant suspended payment of the rent, and paid only 50 per cent of the same, that is, $90 monthly, which he paid for three months to Rafael Villalobos without obtaining the corresponding promissory notes which the plaintiff retained in its possession pending the final liquidation of the contract; that up to May 1933, the defendant had paid to the plaintiff, on account of the contract, the sum of $5,490, leaving a balance of $990 until the termination of the contract, and that by virtue of the new agreements, the plaintiff should pay over to the defendant $50 per month during 36 months, that is, $1,800. And thus setting off his debt to the plaintiff, the latter still owed him $810.

The case went to trial and considerable documentary and oral evidence was introduced, which was considered by the trial court to have established the following facts:

". . . on or about September 13, 1930, a lease contract was entered into between the plaintiff and the defendant Bernardino Ortiz, with respect to the building referred to in the complaint and devoted to the bakery business.

". . . said lease provided for a rental of ONE HUNDRED AND EIGHTY DOLLARS per month, that is, six dollars a day, and for the payment of the said sums 36 promissory notes were signed by the defendants and delivered to the plaintiff corporation.

". . . the defendant Bernardino Ortiz paid 29 of the said promissory notes, leaving seven of them (corresponding to the month of March, April, May, June, July, August, and September, 1933) unpaid.

". . . in spite of the fact that the bakery was leased to the defendant Bernardino Ortiz, Mr. Secundino Rodríguez continued working there, alleging as a ground for not leaving the premises that he was paying the corporation the sum of FIFTY DOLLARS monthly.

". . . later the said Rodríguez left the bakery, there remaining in the same, nevertheless, one Juan Andújar, who also alleged that he was paying the plaintiff TEN DOLLARS per month as rent, which fact was established in evidence by the receipts issued by the secretary of the plaintiff corporation to Mr. Andújar, which total $73.35, Andújar having remained indebted in the amount of $60 for rent, which was demanded of his surety, Mr. Rafael Villalobos.

". . . the defendant Bernardino Ortiz paid the plaintiff three installments of $90 each, which he delivered to Mr. Rafael Villalobos, without obtaining the return of any promissory note, as Ortiz wanted the amount of the rental reduced by 50 per cent, to which Villalobos did not accede, and the said sum was not returned to Mr. Bernardino Ortiz."

The court went on to say:

"The contention of the defendant in this case is that he never took possession of the real property referred to, because it was occupied by the above-mentioned lessees . . .

"Our attention is strongly drawn in this case by the fact that the defendant Bernardino Ortiz, who, according to his allegations, was never in possession of the bakery in question, should be paying rent, and should be content with receiving credit for the sums paid

as rent by the other lessees, that is to say, that he should be paying $6 a day, or $180 a month, without having possession of the bakery, and that he should be satisfied to receive $50, which is what the others paid, losing monthly the sum of ONE HUNDRED AND THIRTY DOLLARS, which leads us to the conclusion that . . . the agreement in question partakes of a different character, to which we do not wish to refer in this opinion . . .

"We must accept the facts just as they have been presented and as they appear from the evidence offered by the parties in this case, and it is clearly evident from the same, that a lease contract exists between the plaintiff and the defendant Bernardino Ortiz, and that the latter is bound to perform the same in all its parts, one of the essential requisites being . . . the payment of the rental . . .

"If Bernardino Ortiz did not, from the beginning of the contract, obtain possession of the property leased, he should have rescinded the contract, or taken the necessary measures to free himself from the fulfillment of the obligations which he had thereby assumed, but once he had complied with his part of the contract and after having complied for a long time, it seems to us improper and contrary to law for him to refuse payment.

"The commentator Manresa, in volume 10 of his *Comentarios al Código Civil*, 2d. edition, p. 530, in referring to this question says:

" '. . . The lessee who tolerates the default of the lessor and remains silent, and remembers it only when it is time to pay the rent, seems to excuse himself on a pretext rather than to base himself on a reason. In order to be effective, the right must be exercised opportunely and by legal means."

"But in spite of this, the fact having been established by the evidence that during the time of the contract the bakery was producing benefits for the plaintiff corporation, by reason of the fact that Secundino Rodríguez, Juan Andújar, and Juan Rodríguez were working in it, would be entirely unjust to compel Bernardino Ortiz to pay the rental to the plaintiff corporation and at the same time allow the latter to receive the benefit of the payments made by these gentlemen . . . .

". . . the evidence . . . has not clearly shown that Secundino Rodríguez paid the plaintiff any sum as rent, but it does appear that Juan Andújar paid several sums amounting to $73.53, leaving a balance of $60 which his surety, Mr. Villalobos, must pay, and this being the case, it seems to us that these sums should be applied to and deducted from the claim which the defendants in this action must

pay, to which sums we must add the amount of $270 which was delivered by the defendant Bernardino Ortiz to Mr. Villalobos and which has not been applied to his credit, and was not returned to him at the time when he wished to pay it and it was not accepted.''

The court concluded by saying that the case should be decided as follows:

''In these circumstances, we are of the opinion that the plaintiff is entitled to a judgment ordering the defendants Bernardino Ortiz, Cleofe García Badillo, and Guillermo Garán to pay jointly and severally to the plaintiff the sum of $856.65, which represents the total claim less the sum of $403.35, which is the total of the sums paid on account by the defendant Bernardino Ortiz and of the rentals collected by the plaintiff from the lessee already mentioned, and judgment is also entered for the defendant on the counter-claim, and the pla'ntiff is ordered to pay the defendant Bernardino Ortiz the sum of $403.35, covering the amounts paid by the latter and the rent paid by the persons who occupied the property, which sum will be credited to his account and deducted from the total of the rentals which he owes, . . . with costs against the defendants, as this obligation appears from the promissory notes which have been presented in evidence . . .''

Feeling aggrieved by that judgment, the defendant Ortiz appealed to this Supreme Court and has assigned three errors. He maintains that the judgment is contrary to the very facts which the court found to have been proved, and since the counterclaim was decided in favor of the defendant, the latter should be allowed to set off the full amount to which he is entitled, and the plaintiff should pay the costs.

We have ourselves examined the evidence introduced, and in our opinion, it supports the judgment appealed from.

██ The lease contract appears from a public deed. Its terms are clear. The plaintiff leased to the defendant Ortiz a building in which a bakery was installed, for three years at a rental of $6 a day, in payment of which there were delivered to the plaintiff 36 promissory notes signed by the defendant Ortiz and the other defendants García and Garán in the manner which we already know. Each note was for

$180 maturing monthly, and the last seven were not taken up. The bakery was delivered upon an inventory which was accepted by the defendant Ortiz.

It is true that the leased bakery continued to be operated by other persons directly related to the plaintiff, which received small sums from some of them, but it was with the knowledge and consent of the defendant Ortiz, because the said persons did not manufacture bread but pastry and crackers. The non-manufacture of bread was what the defendant Ortiz was interested in.

The evidence shows so clearly that the lease was made by the defendant Ortiz for the purpose of controlling the bakery in so far as the production of its basic product, bread, was concerned, that to fail to recognize it is to refuse to admit reality itself. And therein lies the explanation of the conduct of both parties, which does not in any way affect the payment of the rent, which was made by the defendant, without difficulty, until seven months before the expiration of the lease.

What happened to cause the defendant Ortiz to change his attitude? The answer is found in the testimony of another of the defendants, Garáu, which appears on pages 244 to 246 of the transcript. He said that when the plaintiff demanded payment of him he had an interview with Ortiz. "Then I asked him why he did not fix that up, and then he answered me that he was the one who had leased the bakery and that he would take care of paying that, but that the corporation had to give him a 50 per cent reduction." And when he was asked: "Why did he ask for a reduction of 50 per cent?", he answered: "Because competition arose in the bread business and the business was bad."

He immediately explained that in other lease contracts the reduction was granted, but that in this one, the plaintiff was not obliged to make the reduction because the possibility had been foreseen in the contract, as indeed it had been.

The attitude of the defendant Ortiz in paying $90 instead of $180 for each of the first three of the remaining seven months in question is consistent with the testimony of the defendant Garáu. The payments were made to and retained by Villalobos, former president of the plaintiff corporation, who continued to be a creditor of the same and was a person of great influence in its affairs, and not directly to the plaintiff, and when Villalobos presented the case to the corporation, the latter refused to accept the reduction.

The appellant has no cause for complaint. The court was as just as possible with him, doubtlessly inspired by the sort of transaction involved. However, in acting as it did, it was not obliged to grant him everything claimed in his counterclaim, but only such part of his claim as he had shown should be allowed to.

There is no incongruity between the facts found and the judgment. The court did not find that the plaintiff had received $50 per month from Rodríguez, but that Rodríguez had alleged that he was paying this amount to the corporation, and later added that the evidence did not show that Rodríguez had paid any sum to the corporation for rent, and such is indeed the case.

The court could properly hold for the defendant on the counterclaim, and limit this holding to so much of it as was established at the trial. In so acting, it conformed to the facts and the law and to the very prayer of the answer and counterclaim of the defendant-appellant. There was no error.

Nor did the court err in not awarding costs to the defendant and in granting them to the plaintiff. In denying costs to the defendant it used its discretion properly, and in awarding them to the plaintiff it took into account the written agreement made by the contracting parties themselves.

The judgment appealed from must be affirmed.